## LEE U. ONG v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. April 5, 1920. Rehearing Denied
May 17, 1920.)

### No. 3396.

**1. Jury ⬤⟂92—Railroad employé not disqualified as employé of government.**

Under the President's proclamation assuming control of the railroads,
the Federal Railroad Control Act March 21, 1918 (Comp. St. 1918,
Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), and Act July 3, 1918, pro-
viding that nothing therein shall be deemed a recognition of railroad em-
ployés as employés of the United States, a railroad employé was not dis-
qualified as a juror in a criminal case on the ground that he was an em-
ployé of the government.

**2. Criminal law ⬤⟂959—Court held not to have refused to consider motion for
new trial.**

Where the court denied a motion for a new trial, and denied an oral ap-
plication for leave to file a supplemental motion for newly discovered
evidence, but subsequently ordered that the motion might be filed nunc
pro tunc, but adhered to his former ruling denying the motion for leave
to file such supplemental motion, there was no refusal to consider the
grounds of the supplemental motion, as the court evidently considered
them on the oral application, and subsequently ordered the motion filed
in order to permit defendant to reduce it to writing and obtain any pos-
sible benefit of the additional ground.

In Error to the District Court of the United States for the First
Division of the Northern District of California; Maurice T. Dooling,
Judge.

Lee U. Ong was convicted of conspiracy, and he brings error. Af-
firmed.

Marshall B. Woodworth and P. A. Vincilione, both of San Fran-
cisco, Cal., for plaintiff in error.

Annette Abbott Adams, U. S. Atty., of San Francisco, Cal.

Before GILBERT and HUNT, Circuit Judges, and WOLVER-
TON, District Judge.

HUNT, Circuit Judge. Plaintiff in error, Ong, was indicted with
others under section 37 of the Criminal Code (Comp. St. § 10201), for
conspiring to bring into the United States Chinese persons not lawfully
entitled to enter. He and others were also indicted for conspiring to
conceal and remove certain records in the immigration office at Angel
Island, the records relating to Chinese persons, with a view to effecting
their unlawful entry into the United States. The indictments were
consolidated for trial. Defendant was convicted under both indict-
ments, and by writ of error raises two questions for review.

[1] The first is founded upon the overruling of a challenge for
cause interposed by the defendant to a juror named Kelly. Examina-
tion of the juror disclosed that he knew nothing of the case, had no
acquaintance with the defendants, and had no prejudice or impressions
concerning the guilt or innocence of the defendants on trial. The juror
said that his business was that of ticket agent for the Southern Pacific

⬤⟂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company at the Palace Hotel office in San Francisco; that he was an employé of the Southern Pacific by which he was paid. The ground of challenge was that the juror, being an employé of the railroad company, was an employé of the government, and therefore disqualified. In the proclamation of the President issued December 26, 1917 (40 Stat. 1733), the President, acting under the power conferred upon him by Congress, assumed control and possession of the systems of transportation, including the railroads; but it was expressly proclaimed that, until and except so far as the Director General of Railroads should otherwise provide, the boards of directors and the officers and employés of the various transportation systems should continue the operation thereof in the usual and ordinary course of business of common carriers in the names of their respective companies. See, also, the Federal Railroad Control Act of March 21, 1918 (40 Stat. 451 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p]), where the control is limited and defined, and it is provided that in actions or suits no defense shall be made upon the ground that the carrier is an instrumentality or agency of the federal government. There is no provision under which the employés of the railroad companies were made the employés of the government, and that such was not the intention is evidenced by the act of Congress approved July 3, 1918 (40 Stat. pt. 1, pp. 757 and 815), making an appropriation for the legislative, executive, and judicial expenses for the fiscal year ending June 30, 1919, wherein it was expressly provided that the section should not apply to employés of the railroads—

"taken over by the United States, and nothing contained herein shall be deemed a recognition of the employés of such railroads as employés of the United States."

In expressing opinion upon the act, and how it should be construed, the Comptroller of the Treasury has held that the assumption of administrative control of the railroads by the government did not make them an integral part of the government system, but that they were to be operated as common carriers, subject to all existing laws, state and federal, with a status the same as prior to the executive order, except for the supervisory control of the government to secure the needs of the war. Decisions of Comptroller of Treasury, July, 1918. In Crawford v. United States, 212 U. S. 183, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392, Crawford was the paid servant of the United States, a salaried employé, and therefore disqualified for implied bias. We are of opinion that the juror Kelly was not disqualified for cause.

[2] It is said that the trial court erred because it refused to entertain or to permit to be heard the supplemental motion for a new trial. The defendant was convicted on November 21, 1918, and on December 14, 1918, his counsel filed a written motion for a new trial, based upon errors of law. On January 6, 1919, such motion for a new trial was denied, and an exception was preserved. Counsel for Ong orally asked leave to file a supplemental motion for a new trial, based upon the ground of newly discovered evidence; but the court denied such oral application and sentenced Ong to prison. On January 16, 1919, counsel for Ong made a motion for leave to present and file a supple-

mental motion for a new trial, based upon the ground of newly discovered evidence, and the court ordered that the motion might be filed "nunc pro tunc as of January 6, 1919." The bill of exceptions recites:

"The said request to file nunc pro tunc being granted by the court, but the court nevertheless, adhering to its former ruling, made and entered on January 6, 1919, denying the motion to file the supplemental motion for a new trial on the ground of newly discovered evidence, to which counsel for the defendant duly excepted."

The bill then recites that written request for permission to present and file a supplemental motion nunc pro tunc, and in place of the oral request for such permission, and the motion itself in writing for leave to present and file a supplemental motion for a new trial, which "as stated, was denied by the court and exceptions duly noted, were in words and figures following, to wit." The supplemental motion was based upon the ground that at the trial one Ferguson and one Armstrong were material witnesses for the government, and that each had testified that he had not been promised and did not expect immunity in the matter of certain charges then pending against them, whereas the truth was that they had been promised clemency by Mr. Densmore, representing the United States.

The argument of counsel for Ong is that the court, although it granted permission to the defendant on trial to file in writing the grounds of the supplemental motion for a new trial as of January 6, 1919, nevertheless the court did not modify the ruling made and entered on January 6, 1919, denying leave to present the supplemental motion for a new trial. But in view of the fact that the court granted leave to file a supplemental motion as of January 6th, based upon the ground of newly discovered evidence, it is fairly to be inferred that, when the oral application was made, the court heard and considered the grounds upon which the motion was based, and therefore that, in denying leave to file the motion, in effect the court denied the motion for a new trial based upon the grounds afterwards reduced to writing. The evident purpose of the court was to permit the defendant to reduce his motion to writing in order to obtain any possible benefit of the additional ground of motion, namely, newly discovered evidence; that ground not having been included in his original written motion. The court, however, was evidently advised of the grounds of the motion and did not refuse to consider them. In Ogden v. United States, 112 Fed. 526, 50 C. C. A. 380, cited by plaintiff in error, the record showed that the court failed to consider the motion for the new trial or the affidavits in support thereof. A similar condition was presented in Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917.

We find no error, and affirm the judgment.

Affirmed.